United States v. Brian Goorahoo Council, if you'd just give us a couple more seconds. As folks are exiting, I'll let you know. Thank you. Just to make sure the audio is not disturbed by the background noise. All right. You may proceed when you are ready. Thank you. Good morning, your honors. May it please the court. Edward Zasch from the Federal Defenders of New York. I represent the appellant Brian Goorahoo on this appeal. The district court, over objection, imposed $10,000 in criminal restitution to the victim known as Vicki. This amount is more than three times the mandatory minimum amount set by Congress in the AVAA. It's more than three times the amount calculated using the most common method for calculating restitution in these cases after Paroline. And it is more than three times the amount that courts around the country have generally awarded Vicki in materially identical cases. This court should vacate the award for two principal reasons. First, the district court did not sufficiently explain, as it must, how it determined that this unusually high $10,000 award was the appropriate amount. As a result, this court is unable to determine whether the restitution calculation was based on sound methodology. Second, and alternatively, if this court decides that the record allows meaningful review, it should vacate the award as both procedurally and substantively unreasonable. On the first point, this court has held that restitution must be calculated with reasonable certainty using sound methodology. Could you confine yourself, though, to discussing the restitution standards established in 2259 rather than restitution generally? Because it seems to me, based on that and the discussion in Paroline, that we're really in a different kind of universe of causation and, you know, tracking harms. And what the district court was doing is it had substantiated extensive losses over a long period of time. The 1 over N method, you know, we have no idea. This was going on forever. Congress picked a $3,000 minimum without regard to any actual losses suffered by anyone. And she seemed to me to be looking at the experience, the number of claimants, the number of perpetrators, I guess, who had been identified as using a Vickie-related material. And the fact that this was a video, the other stuff he had in his possession. And she, you know, was looking at and trying to derive some measure that showed that this was more than the minimum that Congress mandated for every single victim. So what's wrong with that analysis when we're really in a different regime here than in your standard restitution analysis? Unless you disagree with that premise. Well, I'm not aware of any cases, certainly I'm not aware of cases from this court, that apply a different standard of review for restitution, whether it's ordered generally or under this particular statute. I'm not saying different standard of review, but I'm looking at what the Supreme Court in Paroline said about causation and about how courts should generally look at restitution in the child pornography context, which seems to me different from, you know, restitution in a theft case. So let me see if I can come at it this way. Speak right into the microphone, please. Thank you, Judge. Let me see if I can come at it this way. Our main point, before you really even dig into the Paroline sort of factors, is the district court never articulated how she arrived at $10,000. Well, that's a different thing. And you made two arguments. One is that we don't really know how she arrived at that figure here. The other is that that figure is necessarily wrong. And I have more problems with, for the reasons that Judge Carney says, with the second, because I don't really know. It may be that even though this was one of many, many people, that this one was sufficiently significant that under the Supreme Court's causation test, $10,000 might be okay. The fact that the average, that the 1 over N and all comes out around $3,000, is all relevant to that, but doesn't tell me very much about what there is about this particular case. Now, you know, this is an odd case. Your client got almost no jail sentence. Well, that cuts in one direction. It tells me that the court was looking at this case as rather differently from Moe's. And if it was looking at it rather differently from Moe's on the jail sentence, it might also have been looking at it differently from Moe's on how much this person, Vo, was responsible for Vicki. So let me see, Judge Gallagher, if I can. Don't put your hand in front of your mouth.  Let me see if I can address your concern and also not overlook Judge Carney's question. Whatever order you'd like to take our comments. The central point of Paroline, right, is that there are two essentially competing concerns in the statute. One is to ensure full recovery to the victims of this horrific crime. But the other is that any one offender's restitution responsibility has to be limited to the losses that are proximately caused by that offender. I'm going to interject just for a moment here. I'm just looking at what the district court said in sentencing, quoting from Paroline, which is what we're discussing, that the court should order restitution in the amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. So comports with the defendant's relative role, right? That is exactly right. That's exactly the right standard. We're not quarreling with that. But I think it's not disputed that Mr. Guru, whose conduct falls, you know, if there's a ladder of culpability in these cases from the lowest, which is the person who possesses very few images or a single file, to the person then up the ladder who distributes, and then the person who was involved in the creation, there's nothing in this record, and certainly nothing identified by the district court, and this kind of goes to Judge Calabresi's point, that takes him out of the heartland of all these other defendants we've identified around the country who get, I'm sorry, Your Honor, is there a question? To be clear, you keep saying there's nothing in this record. And I think this goes to the questions that both my colleagues, Judge Carney and Judge Calabresi, asked you about is the fact that there were two victims in this case. One victim submitted just a letter, nothing backing up damages, nothing backing up the financial impact of the crime on that particular victim, and the court awarded the minimum, right, the $3,000 minimum. But as to this particular victim, the court said, if you haven't already, I encourage you to read the victim's letter and how her life has been devastated by the victimization that she faced, and the knowledge that there are other people in the metaverse looking at those images of her. The court went on to say that every time she gets this notice, which they're required to get, she's re-victimized. She submitted hundreds of pages of documents of all the damages she has suffered. And so how is it unreasonable that given all that documentation the court received about the impact on this victim, how she continues to be victimized, and how her recovery to date, which I know is an issue that you take, but her recovery to date is far from whole, that ordering $10,000 is unusual, particularly when one way to look at it is your client got a huge break. He hardly got any, you know, he got almost a walk. How is it so unreasonable that the court looks at the depth of documentation provided and orders $10,000? Why is that not enough in the record, and not just that reference but other references in the sentencing? Your Honor, no one is denying, certainly I'm not denying, the harm that both of these victims suffered. In fact, Vicki, without dispute, proved that she has suffered a total of $6 million. But the analysis under Paroline is not kind of a free-form kind of equitable analysis where you might say, well, we're going to look at rough justice or the interest of justice or a defendant's means or how much the victim has recovered to date. It's a very specific inquiry into what each of these downstream offenders and the harm they committed. So the fundamental point I'm trying to make overall is if you have cases around the country where there are people who have had the same exact condom, a single video of Vicki, who are ordered not identically but roughly $3,3500, the onus is on the court to provide a reason. Okay. Let me ask you a different question. There is no doubt that your client objected to the amount. What I at least have been focusing is on whether the explanation for that amount was adequate. And the presiding judge suggested it. I have my doubts. But my question is, did your client object to that? That is, when we're looking at the lack of explanation, is the standard a plain error standard or is it the other? Because that might well make a difference. That is, I might well agree with you that the explanation was inadequate. But if there was no objection to that, then the test is a somewhat different one. Your Honor, I see I'm well over my time. May I answer the question I know we're trying to get? Yes, please. Thank you, Your Honor. Judge Calabresi, we did not object to the inadequacy of the explanation, as you point out. We have assumed in our briefing, and I'm prepared to assume here today, that under this Court's cases you would review for plain error. We don't challenge it because you have a series of cases that say where we, the Court of Appeals, can't figure out why the district court did what it did. That prevents us from conducting a review and, therefore, constitutes plain error. So we're relying on those cases. Well, but there is something of a problem here because if a reason and explanation was not given, was because your client's lawyer did not say to the Court, we need more, there's just a bit of sandbagging. And that's just where plain error is most powerful, in order to say, hey, don't let the Court do something which is a mistake. And then if you don't like it, if you like what the Court did, quiet. If you don't like it, then you come in and say, hey, you made a mistake. And that, to me, is when I am most likely to say sorry, plain error, you could have done better. There is no evidence of any sandbagging. I don't mean that you intended to sandbag. I just mean that we apply it most in sandbagging situations. With respect, the presider has given me permission to ask, in terms of aggravating factors, you seem to draw a distinction between possession, distribution, trafficking, broad categories. The district court, in my reading, drew a distinction between possession of a single image, a still image, and possession of a two-minute video, the age of the victim at the time that the video was made, as well as cited the number of other images, 3,150 images of other children that your client possessed at the time, as putting it above his culpability and then the causal effect at a somewhat different level. And a more finely gradated, or graduated, I guess, scale. Do you accept those as aggravating factors, or do you think those should not be considered? The last one is easy because it has nothing to do with Vicki. Vicki's restitution turns only on the harm that Vicki caused, so that one is easy. As for the other factors, I don't recall the judge making those distinctions in terms of explaining why the award was so high. The judge basically said, I've considered the factors in Paroline, but never ties those factors to any, to the results. So, for example, one of the factors in Paroline is the number of defendants who've been ordered to pay restitution. Here it was about 1,900 defendants. But that doesn't tell you anything unless you tie it to some, to some reasoning that tells you why it's $7,000 more than the floor. I think you could take the position, and she might have expanded on the factors I just mentioned, by saying a video causes more harm than a still photograph, as well as a video made at age 9, as opposed to age 13, causes more harm. And so that tended to demonstrate greater culpability than, given the documentation that Judge Kahn has cited, you know, greater causation warranting a greater reward. I don't foreclose that possibility at all. But that's not coming from the district judge's reasoning. That's something that, for example, if the court were to remand, she might well come out with a very persuasive explanation for why it's so high. And that would survive, I think, substantive review. The problem at this stage is, first, I keep asking myself, why 10? And I don't come up with an answer. But let's assume you reject that and you say, well, we know enough. There's two legal errors we've identified. So it's not just that the amount is too high. It's that, as Judge Kahn noted earlier, the judge specifically cites the fact that Vicki has recovered less than half of her damages so far. And that's accurate. But that has – we have no control over how much money those offenders have. You say that is not a consideration that is proper. In fact, it's contradicted by Paroline. Paroline says –  Rejects joint and several liability precisely because the statute does not permit courts to take into account what if other offenders – If that were relevant, you might say that because the defendant is very rich and is there, the defendant should pay $3 million. That's right. Or if the defendant is one of the first two prosecuted, you might say, well, this victim hasn't recovered anything, so I'm going to impose a lot more. On the other hand, it might be the last defendant. I just wanted to close. You always have the option, if you decide not to do a full remand, to do what was discussed in the prior case, which is to do a Jacobson remand, just to say we have our doubts as to why could you elaborate on how you computed it. We understand that's an option. Thank you, counsel. Thank you so much. You have reserved your two minutes for rebuttal. May it please the Court. My name is Elizabeth D'Antonio, and I'm an assistant United States attorney in the Eastern District of New York. When Vicki was a child, she was subjected to years of violent sexual abuse. Her abuser, who is also her father, produced videos and photographs of this abuse that are now widely circulated on the Internet. One such video was found in the appellant in this case, Brian Guru, whose electronic device, and it's what brings us here today. Guru appealed the restitution award that was ordered by Judge Matsumoto. However, in determining appropriate restitution, the strong record at Guru's sentencing makes clear that the district court did exactly what it was supposed to do, and best suited to do, as the decision-maker closest to the facts of the case. It exercised its discretion. But what do you make of the fact that the district court specifically said, and she hasn't gotten paid back by others? Yes, Your Honor, that is part of the record, but that was directly responsive to an objection that had been made in Guru's pre-sentence pleadings, or submissions. Essentially, the objections that are different than what is raised today as to the sufficiency of the record, in the pre-sentencing submissions, Guru, who argued, well… But how do we know that the district court didn't decide on that basis, rather than on the basis of things that are in the record, on the basis of which she could have assessed more, when the district court didn't expressly tell us which it was doing? Now, it may be that because the other side didn't object, that under plain error we can ignore that. But if it weren't plain error, I would be troubled by the fact that there is a possibility it went on something which was erroneous, or the possibility it went on something which was okay, and it didn't really tell us. Your Honor, I think if you were to look at the context in which the statement was made, it's directly responsive to an objection that had been made six days earlier in Guru's submission, where he said, the government has failed to meet its burden by not providing this information to the court in advance of the sentencing. And because of the fact that the government failed to provide this information, they haven't met their burden. And the court responds and says, specifically to this, it's, I note Mr. Guru's objection to a restitution amount of more than the statutory floor, but I do not find this argument persuasive. Contrary to Mr. Guru's contention, the government's submission does include detailed information on the total amount of restitution. That is that the victim has received less than half of her claimed damages as of February 2023. This was a year ago, and that was the date of her last restitution request. So in light of the fact supporting the amount of damages she's claimed, over $6 million, and in fact she's received payment for less than half, I find that it is reasonable. So within this context of addressing an objection that was made, but Your Honor, of course this requires us somewhat to speculate as to what was in the mind of Judge Matsumoto at the time when she spoke, which we do not know, but what we do know, looking at the record in its entirety, is that she was very thoughtful and careful in the way in which she addressed the various issues. She, at the beginning, notes all of the documents and evidence that were submitted prior to sentencing, the pre-sentencing report from probation, the part of the sentence… I must say that one of the things that leaves me puzzled is the very low sentence that this judge imposed, together with a restitution that was more. There's something odd about that. If this person was such a serious causer that she should do more than her proportionate share with all the others, one would have thought that a higher sentence was justified. Now, I don't know. There may well be reasons why a lower sentence, and they're not inconsistent, but you've got to allow me some puzzlement. Judge, I think it's important to note that there is a spectrum, right, of possible reasonable restitution awards in this case. You're not saying that… I'm not saying that this award might not be reasonable because there is a spectrum. I'm just wondering whether the district court actually decided it on a basis that is reasonable or something else. I mean, frankly, I'm much more concerned with the first point that opposing counsel has made, and then I have a question of whether this is plain error, but I'm not so much concerned whether it couldn't be perfectly reasonable. Just as a low sentence could be perfectly reasonable. Does sentencing have to be related to restitution? In other words, when the court's looking at restitution, the court is looking at making victims whole. When the court is looking at sentencing, the court is looking at what's an appropriate sentence. That restitution is not a factor, right? It's adequate punishment. It's rehabilitation. It's deterrence-specific and general deterrence. Those are the factors that the court looks at in fashioning an appropriate sentence and whether that should be jail or not. I don't see restitution as being tied necessarily to what an appropriate sentence ought to be. Now, a fine is a different story, but restitution is intended to serve a different purpose, which is to sort of rectify or try to make a victim whole. What's your position on that, the difference between restitution and a sentence? Yes, Your Honor, they serve two different purposes, and I think that's very important here. Yes, they do serve two very different purposes, but causation is relevant to each of the purposes. That is, to the extent that a defendant has caused great harm, that is one of the aggravating factors in a sentence. To the extent that a defendant has caused financial harm, that's what the Supreme Court has told us is relevant to restitution. So while there are ten different factors that are different for each, there is one factor that applies to both, and that's where I'm left puzzled. If I may, could you address the point that Mr. Zass has made about Vicki getting as a standard matter for presumably analogous offenses, possession offenses, regularly $3,000 in many, many district courts around the country, and for what seems to be a, not to minimize the harm, but still one single two-minute video, getting three times, over three times the amount that's been awarded as an appropriate causation determination of the amount due her. I don't have all the details of the dates, but they seem relatively recent, I think in 2024. How do you account for that variation, the significant variation? So there are other cases where restitution was awarded in $10,000 for straight possession. Okay, but there are one, two, three, four, five, six, I think, in the past year, 23, 24, that were at the $3,000 level. And the one that you're referring to is in the Eastern District of New York, the $10,000. Correct. And that's a single one, correct? But, Your Honor, actually there have been other decisions, and some of them were not mentioned in our brief, but some are. And I think what's important here is like in the case Rothenberg, it's an 11th Circuit decision, where the defendant neither created nor distributed the child pornography or the child sexual abuse material involving Vicki. But that court upheld a restitution award, I believe it was in the amount of close to $8,000, for just a couple of photos, not even a two-minute long video, which is different. Yeah, we can quarrel about whether a two-minute video is a whole lot different, I mean, when it's just a possession charge. And I think the $10,000 award in Picon was not challenged. And so, again, it's a little bit different circumstance. So ones that have been regularly authorized have been a $3,000 causation chain. Do you know of any reason to distinguish those cases and the calculation undertaken? Yes, so, Your Honor, the majority of the cases cited by appellant were actually when the victim's losses were much lower. And so if you were applying a one-end- Sorry, I thought these were all for Vicki. Yes, Vicki, but- So she has the same big documentation of the harms suffered and the projected harms in the future, right? Yes, Your Honor, so in the appellant brief where they cited DeLeo and those Eastern District cases where the awards were much lower, those were awards that were granted by and large before the AVVA's mandatory $3,000. But I would like you to focus on the ones that were after the AVVA that were in the past year, year and a half, with regard to Vicki herself, and which were uniformly $3,000, I understand. So what makes those different? Maybe you don't know and can only speculate, or maybe you haven't taken a close study of them, but do you know of- because that also I find troubling, since we're talking about the same kind of causal determination that the district court was obligated to undertake here. So, Your Honor, I don't know if all of those cases are factually similar to Guru's case. What I do know is that there were aggravating factors here that were addressed by Judge Matsumoto, and one of those, besides just the age distinct, you know, the fact that she was 10 years old, or it was a two-minute long video, but this was not an accidental recovery or an accidental possession, you could say, where the judge points out that Guru had actually sought out these materials and implored others to provide CSAM material to him. Also, in light of the fact that in some of those cases, Your Honor, I know that the judge's ruling had actually been such that the fact that Vicki's already, you know, had so many outstanding restitution awards, how do we know that almost that she hasn't recovered everything already, or that her image is so widely disseminated on the Internet that there will be plenty of defendants in the future to pay future restitution awards. Here, what Judge Matsumoto has done is determined that $10,000 was appropriate in light of the defendant's causal role in causing Vicki's harms, but also consistent with what the government's request was. In some of those cases, the government didn't necessarily request the same amount of restitution as probation had recommended or what the victim had wanted. And here, Judge Matsumoto's award was consistent with probation's recommendation in light of the victim. Yeah, but that doesn't mean anything. You know, the fact that the court did what the government wanted doesn't tell us anything. It's the job of a court to determine whether what the government wanted was right, so I wouldn't go down that line. Well, it's also in terms of probation's recommendation and what the victim's attorney has requested. In other cases, Vicki's attorneys, where it was a distribution case, had actually requested $50,000. And I'm struck. Okay. But I think, Your Honor, what you've asked is that $10,000 has, in the range of restitution awards granted Vicki in the Eastern District, where it was between $1,000 and $27,000, $10,000 falls pretty square in the middle of that. Again, we're looking at a reasonableness as, yes, is the appellant the worst of the worst? No, he's not a hands-on abuser of Vicki. But even in that case, with Vicki's own father, the restitution award, I believe, was $6,000. At that point, her losses were different, and I think that's one of the inherent challenges of determining restitution in these cases, where there is an imprecision that is necessitated just by the nature of the case, where you have an unknown future number of defendants, where Vicki's losses continue to grow as there are complications with her health based on the trauma suffered. And that's what Paroline does so well. It says we are not intending to remove the discretion from the trial court. We understand that the trial judges are in the best position to make a decision in these cases. They are closest to the facts. And in no way was Paroline designed to impose on the district judge a precise mathematical inquiry or any type of algorithm that must be applied in every child sexual abuse material possession case. Because Paroline is really just on the possession cases. It's not talking about the hands-on abuser or the traffic distributor. The case is just like the appellant's. Thank you, counsel. Thank you. Attorney Zas, you've reserved two minutes for rebuttal. Your Honor, I just want to use my rebuttal to make two overall points. One is in light of some of the questions that were asked of the government and some of the statements the government itself made, I'd like to press for at least the Jacobson remand. There's just too much uncertainty on this record to be confident that the court had applied a sound methodology, assuming you can figure out what the methodology was. And also the government, I think, seems to acknowledge that the judge's reference to the amount that Vicki has recovered from other defendants, it's at least ambiguous as to whether the court is adjusting Mr. Guru's liability based on that or not. So you don't think that was just in response to a concern about overcompensation? No, no, I don't think anyone's raising, no one ever raised a concern about overcompensation. It was undisputed. Did your client raise an objection that there was no information provided by the government as to what amount she had recovered from the total loss that she presented of $6 million? Yes, there was an objection to the adequacy. So I think that's what the government was saying. Yes. They're attributing the court's remarks to your objection because at sentencing, your client said, at sentencing, the court said, do you have specific objections? Do you want to be heard? And the response was, no, we rest on our papers and the paraphernalia factors. And so the government was making the argument that perhaps that's why the court got into that, because it was the basis of the objection, but conceded that we can't get into the court's head. That is exactly what the government says. Okay. It may be plausible, but as I read the sentence, I mean, the judge is tying this to why she thinks the $10,000 amount is reasonable. And the court wouldn't have to find plain error to do a Jacobson remand. It couldn't just say. Well, my only question, the Jacobson remand comes back to plain error. That is, there's something peculiar about us saying we want more explanation when you didn't ask for more explanation. Well, yes, but you could. It may be that we still, we have a perfect right to do it, but I'm not sure if it were required. Well, no, you're certainly not required. But you could say that if the court meant X, that would be plain error under parallel. But if the court meant Y, it might be fine. We just can't tell. Okay. But I did want to leave you with just a word of caution, because if you decide to reject everything I've told you and to affirm, even if it's a summary order affirming a $10,000 award to Vicki in this case as substantively and procedurally reasonable, Vicki's attorneys are very active and very aggressive, appropriately so, but this is going to be Exhibit A. Your opinion will be Exhibit A in every Vicki case. Thank you, counsel. Your time is up. Can I just finish my brief? Counsel, your time is up. One minute. Thank you. Thank you. The next thank you to both sides. We'll take the matter under advisement.